# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN E. COVINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-5083 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| ANDREA LYNN CHASTEEN, | ) | |
| KRYSTAL SWANBERG, and | ) | |
| WILL COUNTY CIRCUIT CLERK'S | ) | |
| OFFICE, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff John Covington, a black *pro se* litigant, claims that he had a truly bizarre interaction with the Clerk's Office of the Will County Circuit Court. He alleges that someone typed "KLAN" on a series of court orders, and did so to retaliate against him for winning a foreclosure case. He thinks that the clerk's office is out to get him, and is using hateful speech to dissuade him from accessing the courts.

A motion to dismiss the fourth amended complaint is currently on the table. And in response, Covington wants to put the fifth amended complaint on the table. He wants to add an allegation about a conspiracy between the clerk's office and his former landlord. That request is off the table.

This Court already pointed out sizeable holes when it granted an earlier motion to dismiss. The fourth amended complaint does not plug them, and the fifth amended complaint does not fill them.

The story is outlandish to the point of disbelief, and the fourth amended complaint does not contain enough facts to suspend disbelief. The fourth amended complaint does not contain enough factual content to give rise to a plausible inference that such off-the-grid misconduct took place. If anything, the fourth amended complaint does the opposite, by offering an explanation for why the orders said what they said.

For the reasons explained below, Defendants' motion to dismiss Plaintiff's fourth amended complaint is hereby granted. Plaintiff's motion for leave to file a fifth amended complaint is hereby denied.

## Background

This Court already issued an opinion in response to a motion to dismiss the third amended complaint. *See* 7/7/23 Order (Dckt. No. 43). The Court assumes that any interested reader is familiar with that ruling.

Suffice it to say that Covington brought this lawsuit about his experience with the clerk's office of a state courthouse. According to him, things didn't go smoothly.

Covington, a black man, claims that the employees of the clerk's office engaged in "hateful speech." *See* Fourth Am. Cplt., at ¶ 7 (Dckt. No. 44). He points out that the clerk's office sent him four orders that included the word "KLAN." *Id.* He believes that the employees of the clerk's office acted in "retaliation" against him for "winning his first mortgage foreclosure possession case." *Id.*

It is not every day that you see the word "KLAN" in a court filing. And it is practically unheard of to read the word "KLAN" in a judicial order, unless it is describing the allegations of a case. Given that reality, this Court expressed some concern, and raised some questions, about the allegations when it read an earlier complaint. And this Court ordered Defendants to give an explanation. *See* 7/7/23 Order (Dckt. No. 42).

Authenticity questions came to mind. That is, this Court did not know if the orders did, in fact, contain the word "KLAN." *Id.* And if so, the Court wanted to know the reason. So the Court directed the clerk's office to pull copies of the orders from its files, and explain the situation.

Sure enough, the orders did, in fact, say "KLAN."

Of all things, Defendants confirmed that "KLAN" did appear on the orders in question. *See* Defs.' Supp. Statement (Dckt. No. 46).

But as it turns out, "KLAN" was not a word at all. It was a series of letters, separately extracted, and then smashed together. It was automatically generated by the Court's system.

According to Defendants, those letters represented the log-in credentials of an employee of the clerk's office, Kendall Aeschliman. *Id.* The log-in credentials are the first and last letters of the person's first name ("K" and "L"), plus the first and last letters of the person's last name ("A" and "N"). That's "K" plus "L" plus "A" plus "N." So, it's "KLAN."

In other words, "KLAN" is not a word at all. It is a collection of letters for **K**endal**L** **A**eschlima**N**.

According to Defendants, the employee in question did not select those log-in credentials. That's simply how the clerk's office does things in Will County. "All employees of the Clerk's Office are assigned login credentials comprised of the first letter and last letter of their first name, and the first letter and last letter of their last name." *Id.* And as a result, "Clerk Kendall Aeschliman's login credentials are 'KLAN.'" *Id.*

2

Defendants also divulged that Covington is trying to replow old ground. Judge Anderson in Will County apparently explained to Covington the reason for the use of those letters at a hearing on July 7, 2021. *Id.* Defendants even attached the transcript from that hearing. *See* 7/7/21 Tr. (Dckt. No. 46-1) ("Sir, that is the clerk's initials.") (quoting Judge Anderson). Covington also heard the explanation when he filed a complaint with the Illinois Department of Human Rights. *See* 3/11/22 Respondent's Position Statement, *In re John Covington* (Dckt. No. 46-1).

Defendants filed that explanation with this Court on July 28, 2023, a few days after Covington filed the fourth amended complaint on July 24, 2023. But the explanation was not a news bulletin. Covington already knew the story – as the fourth amended complaint itself confirms.

Covington acknowledges that the clerk's office has "policy, customs and practices that permitted its employees to use their personal initials in 4 letter format as log in credentials that created hateful speech word KLAN." *See* Fourth Am. Cplt., at ¶ 29 (Dckt. No. 44); *see also id.* at ¶¶ 53, 63, 79, 80, 96, 157, 177, 187.

Covington believes that the appearance of "KLAN" must be "hate[ful]" and a "pretext" because of the lack of punctuation. *Id.* at ¶ 33. "[A]ny ordinary individual would know that the word KLAN spelled in that form without any periods in between the letters IS NOT an[] individual initials and meant to hate, harm and harass a black person." *Id.* Plus, no one from the clerk's office "offered an apology." *Id.* at ¶ 34.

The fourth amended complaint includes other allegations, above and beyond the appearance of "KLAN." By the sound of things, Covington prevailed in his first foreclosure case. But he had trouble filing something in his second foreclosure case. He simply alleges that the clerk's office "refused to admit the e-filing documents on 4 different occasions." *Id.* at ¶ 8; *see also id.* at ¶¶ 44–48. He mentions problems with the fee waiver.

Later, Covington complains about the fact that an eviction proceeding went forward, despite the ban on evictions because of COVID-19. *Id.* at ¶ 39.

The fourth amended complaint includes 232 paragraphs, and stretches to 62 pages. It contains more than even the most ambitious stapler can handle.

Covington brings eight claims. Counts I through VII of the fourth amended complaint allege violations of the First and Fourteenth Amendments. Count VIII is a claim for intentional infliction of emotional distress under state law. *Id.* at 17–61.

Defendants Will County Circuit Clerk's Office, Andrea Chasteen (the Clerk of Court), and Krystal Swanberg (a Clerk's Office employee) moved to dismiss. *See* Defs.' Mtn. to Dismiss Pl.'s Fourth Am. Cplt. (Dckt. No. 49).

Covington did not file a response to the motion to dismiss. Instead, he moved for leave to file a fifth amended complaint. *See* Mtn. for Leave (Dckt. No. 52).

Every time Covington amends the complaint, the demand for damages goes up. In the first amended complaint, Covington sought $100,000 from each Defendant (Chasteen, Swanberg, and the Clerk's Office). *See* First Am. Cplt., at 43 (Dckt. No. 12). In the second amended complaint, he asked for $200,000 from Chasteen, $200,000 from Swanberg, and $200,000 from the Clerk's Office (a total of $600,000). *See* Second Am. Cplt., at 33 (Dckt. No. 27). In the third and fourth amended complaints, Covington asked for $600,000 from Chasteen, $400,000 from Swanberg, and $400,000 from the Clerk's Office – a total of $1,400,000. *See* Third Am. Cplt., at 58 (Dckt. No. 37); Fourth Am. Cplt., at 62 (Dckt. No. 44). By the fifth amended complaint, Covington asked for $800,000 from Chasteen, $400,000 from Swanberg, and $600,000 from the Clerk's Office – a total of $1,800,000. *See* Fifth Am. Cplt., at 70 (Dckt. No. 54).

The Court will start with the motion to dismiss the fourth amended complaint, before turning to Covington's motion for leave to file a fifth amended complaint.

## I.      The Motion to Dismiss

The motion to dismiss is straightforward. Covington did not respond to the motion to dismiss, which amounts to a waiver. And in any event, the fourth amended complaint could not stand on its own two feet. The fourth amended complaint does not contain enough facts to cross the bridge to the land of plausibility.

The Court will start with the waiver problem, even though waiver isn't the biggest problem.

This Court issued a scheduling order that set a deadline for Covington to respond to the motion to dismiss the fourth amended complaint. *See* 8/22/23 Order (Dckt. No. 51). But Covington did not respond to the motion to dismiss. Instead, he filed a motion for leave to file a fifth amended complaint.

Because Covington failed to respond to Defendants' motion, all arguments against dismissal are waived. *See, e.g.*, *Clinton v. Famous Dave's of Am., Inc.*, 2022 WL 3081762, at *1 (N.D. Ill. 2022) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)); *Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018) (Barrett, J.) ("[A] district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."). The waiver does not mean that this Court will automatically grant the motion – but it does mean that Covington has given up his chance to give a reason against it.

Covington is a *pro se* litigant. So, the Court should (and will) "liberally" construe his complaint. *See Brooks v. Complete Warehouse & Distribution LLC*, 708 F. App'x 282, 285 (7th Cir. 2017). However, even *pro se* litigants must follow procedural rules. *See Brown v. Lakhani Hosp.*, 602 F. App'x 348, 349 (7th Cir. 2015); *see also Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) ("That courts are required to give liberal construction to pro se

4

pleadings is well established. However, it is also well established that pro se litigants are not excused from compliance with procedural rules.") (citation omitted); *Schingeck v. McDonough*, 2023 WL 8106971, at *1 (7th Cir. 2023) (explaining that "all litigants . . . even those proceeding pro se, must follow procedural rules").

No one expects *pro se* litigants to know the Federal Rules of Civil Procedure like the back of their hand. But Covington should have seen the waiver wall coming. In fact, this Court expressly forewarned Covington that a failure to respond would constitute a waiver.

After Covington filed a second amended complaint, Defendants moved to dismiss. *See* Mtn. to Dismiss Second Am. Cplt. (Dckt No. 24). Covington did not respond to that motion. Instead, he filed a third amended complaint (without seeking leave of court first). *See* Third Am. Cplt. (Dckt. No. 37). The Court struck the third amended complaint, explaining that Covington needed to seek leave before filing an amended complaint "this late in the case." *See* 6/28/23 Order (Dckt. No. 39).

After that, the Court granted Defendants' motion to dismiss the second amended complaint. *See* 7/7/23 Order (Dckt. No. 43). The Court dismissed the complaint without prejudice, and granted Covington leave to amend (that is, giving him leave to file the fourth amended complaint). *Id.* at 6. In its order, the Court pointed out that "Plaintiff did not respond to the motion to dismiss. The failure to respond is a waiver of any arguments against dismissal." *Id.* at 1. The Court also provided a lengthy string cite of cases that stand for the proposition that a plaintiff's claims may be dismissed if he fails to respond to a motion to dismiss. *Id.* at 1 n.1.

That's a long way of saying that, despite being a *pro se* litigant, Covington should have known that failing to respond to Defendants' motion to dismiss could result in dismissal. *See Phongsa v. JPMorgan Chase Bank, N.A.*, 2014 WL 2510203, at *2 (N.D. Ill. 2014) (dismissing claims with prejudice where *pro se* plaintiff failed to respond to defendant's "plausible arguments in support of dismissal"); *Garza v. Cervantes*, 2015 WL 468748, at *1 (N.D. Ill. 2015) (same); *Carthan-Ragland v. Standard Bank & Tr.*, 2012 WL 1658244, at *2 (N.D. Ill. 2012) ("A plaintiff's failure to substantively respond to a motion to dismiss . . . provides sufficient grounds for granting the motion."); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("In effect the plaintiff was defaulted for refusing to respond to the motion to dismiss. And rightly so.").

True, Covington responded to the motion to dismiss the fourth amended complaint in a backdoor way, by seeking leave to file a fifth amended complaint. But at some point, a plaintiff has to stop kicking the complaint down the road, and must respond to a motion to dismiss. Filing an amended complaint that does not fix the problems does not add anything except costs and delay. By failing to respond, despite an order directing him to do so, Covington has waived any arguments on the merits.

Putting waiver aside, the fourth amended complaint cannot withstand scrutiny. There's a lot there, but not a lot there.

Last time, this Court expressed serious concerns about the outlandishness of the claims. And the Court required more facts, too. "Here, plaintiff alleged a bizarre set of facts that was difficult to follow, outlandish in content, and sketchy on the details. Given the nature of the allegations, the Court requires more facts and more specifics to get over the hump and state a claim." *See* 7/7/23 Order, at 4 (Dckt. No. 43).

The fourth amended complaint has not sharpened and strengthened the allegations. Covington did not fix the problems that this Court identified in its last ruling. If anything, the fourth amended complaint is more of the same. Drawing on its "judicial experience and common sense," the Court once again concludes that the complaint has fallen far short of alleging a plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

At bottom, the complaint is about the appearance of four letters on orders from the clerk's office. Putting them together, they look like the word "KLAN."

That's a bad look, but the fourth amended complaint acknowledges the explanation. The clerk's office has a policy where employees "use their personal initials in 4 letter format." *See* Fourth Am. Cplt., at ¶ 29 (Dckt. No. 44). Those log-in credentials get printed on the orders that they generate. So, when **K**endall **A**eschlima**n** worked on the orders, the system wrote "KLAN."

Covington does not allege that Kendall Aeschliman, and only Kendall Aeschliman, uses log-in credentials using that format. In fact, he seems to allege the opposite. He acknowledges that the clerk's office has a policy of using log-in credentials based on certain letters in the employee's name. It's a neutral policy that applies to the employees of the clerk's office, and for this particular employee, the system extracted the letters and created the letter-smash that looked like the word "KLAN."

Covington does not allege that the clerk's office created this policy just for him. He does not allege that other employees use a different methodology to generate their log-in credentials. He does not allege any facts supporting the notion that Kendall Aeschliman created those log-in credentials for a racist purpose. And he does not allege that Aeschliman used those log-in credentials for black litigants but not white litigants, or anything of that sort.

It doesn't take a lot of imagination to think of other names that might yield unfortunate letter-scramble combinations that look like four-letter words. Any nearby middle-schooler could probably provide some assistance. And in fact, the record gives another example. As it turns out, another employee in the clerk's office in Will County is named Laura Zasadny. So, for her orders, she is "LAZY." *See* Fourth Am. Cplt., Ex. 7(b), at ¶ 6 (Dckt. No. 44, at 73 of 73).

Covington views any use of the letters "KLAN" as "hateful." But the complaint itself gives the explanation, by acknowledging how the clerk's office selects log-in credentials. The complaint itself contains a plausible explanation, but then draws an implausible conclusion of hateful speech.

Covington's allegation of hateful speech flunks the plausibility test laid down by the Supreme Court in *Twombly* and *Iqbal*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

6

for the misconduct alleged." *See Iqbal*, 556 U.S. at 678. *Twombly* and *Iqbal* require "factual content." *Id.*

The taller the tale, the higher the climb when it comes to plausibility. *Id.* To get there, the facts are the stepping stones.

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); Fed. R. Civ. P. 8. A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)); *Reynolds v. Higginbottom*, 2022 WL 864537, at *2 (N.D. Ill. 2022) ("'[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely. The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel.' One wonders where the little-green-men line is.") (citations omitted); *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002) ("[S]ometimes . . . a suit is dismissed because the facts alleged in the complaint are so nutty ('delusional' is the polite word) that they're unbelievable . . . .").

Speculation and imagination cannot fill factual holes. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original).

It is not good enough to throw a theory out there, and leave the rest to the reader's imagination. Connecting the dots is one thing – but taking a leap of faith is another.

Here, the fourth amended complaint does not offer any concrete facts to support the notion that the clerk's office sent racist orders to Covington. Alleging that the speech is "hateful" isn't enough. Conclusory allegations don't cut it. *See Iqbal*, 556 U.S. at 679; *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.").

In a similar vein, the fourth amended complaint does not allege a claim about denial of access to courts, either. At bottom, Covington simply alleges that the clerk's office did not accept his filing. Rejecting a court filing does not create a plausible inference of anything.

It is not enough to allege that the clerk's office did not accept his filing. That type of refusal happens every day, in every courthouse, in every corner of the country. Courthouses enforce rules, and litigants who do not follow them cannot file documents.

To state a claim, Covington would need to allege that something else was afoot. But Covington did not plug the holes in the fourth amended complaint that this Court pointed out in the third amended complaint. It's a little longer, but not any beefier. *See United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) ("Before the district court could act on Lockheed's motion [to dismiss], Garst filed an amended complaint. At 16 pages and 71 paragraphs, it was 50% longer than the initial complaint – but, the district judge concluded, no better.").

The fourth amended complaint has gotten longer, but not any better. After so many chances to state a claim, the chances have run out. Defendants' motion to dismiss is granted. Covington's federal-law claims are dismissed with prejudice. Covington's state-law claims are dismissed without prejudice because the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (explaining that a court can "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction").

## II.     The Motion to Amend

Instead of responding to the motion to dismiss the fourth amended complaint, Covington filed a motion for leave to file a fifth amended complaint. That motion is denied.

Covington has already had a few bites at the apple. Covington filed a complaint (Dckt. No. 1), then a first amended complaint (Dckt. No. 12), and then a second amended complaint (Dckt. No. 27). While Defendants' motion to dismiss the second amended complaint was pending, he filed his third amended complaint (Dckt. No. 37).

Again, Covington did not seek leave of court first, so the Court struck it. *See* 6/28/23 Order (Dckt. No. 39). The Court granted Defendants' motion to dismiss the second amended complaint but granted Covington leave to amend. *See* 7/7/23 Order (Dckt. No. 43).

So, Covington filed his fourth amended complaint (Dckt. No. 44). Defendants moved to dismiss (Dckt. No. 49). Covington did not respond to the motion to dismiss. Instead, he filed a fifth amended complaint (meaning, his sixth complaint in this suit). And with each successive version, Covington's complaint has expanded in size. *Compare* Cplt. (Dckt. No. 1) (32 pages)*, with* Fifth Am. Cplt. (Dckt. No. 54) (72 pages).

The length itself makes the complaint more difficult for the Court and Defendants to parse. *See, e.g.*, *Lockheed-Martin Corp.*, 328 F.3d at 378 ("Length may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter."). As the Court explained in an earlier ruling, the complaints are not "the easiest to swallow, let alone digest." *See* 7/7/23 Order, at 1 (Dckt. No. 43).

The Federal Rules of Civil Procedure establish a liberal standard for amending pleadings: "The court should freely give leave when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). "The Supreme Court has interpreted this rule to require a district court to allow amendment unless there is a good reason – futility, undue delay, undue prejudice, or bad faith – for denying leave to amend." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357–

58 (7th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A district court does not abuse its discretion by denying leave to amend when a plaintiff fails to show how his proposed amendment would correct the deficiencies in his earlier complaint. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015).

In the fifth amended complaint, Covington adds a conspiracy claim under 42 U.S.C. § 1983. *See* Fifth Am. Cplt., at 56–59 (Dckt. No. 54). For the first time, Covington contends that the Will County Circuit Clerk's Office and head Clerk Andrea Lynn Chasteen conspired with his landlord (Saleem Mohammed) to commence an eviction proceeding against him in violation of section 1983. *Id.* at 58.

A section 1983 conspiracy claim requires a showing that (1) defendants agreed to deprive the plaintiff of his constitutional rights and (2) took overt acts in furtherance of the conspiracy that actually deprived the plaintiff of those rights. *See Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018).

As Defendants point out in their motion opposing leave to file a fifth amended complaint (Dckt. No. 55), Covington's allegations about the conspiracy are conclusory. Covington alleges that Defendants "reached an understanding" with his ex-landlord to "deprive [Covington] of his constitutional rights." *See* Fifth Am. Cplt., at ¶ 226 (Dckt. No. 54). Likewise, he alleges that Defendants reached an "express or implied agreement" to deprive him of his rights "and that agreement was to accomplish either an unlawful purpose or an unlawful purpose by unlawful means." *Id.* at ¶ 228. He goes on to contend that Defendants conspired with his landlord to "commence and schedule an illegal[] eviction hearing . . . ." *Id.* at ¶ 232.

Legal conclusions do not make a claim. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (opining that courts "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). Covington simply states that the elements of a conspiracy are met, and who was involved, without offering facts to support his theory. *See House v. Belford*, 956 F.2d 711, 721 (7th Cir. 1992) (affirming dismissal where plaintiff failed to sketch out facts showing that "conspirators" reached an understanding to deny his constitutional rights).

Federal Rule of Civil Procedure 8(a) does not set a high bar, but Covington doesn't clear it. *See Griffin v. Milwaukee Cnty.*, 369 F. App'x 741, 742 (7th Cir. 2010) (opining that "unconnected legal conclusions sprinkled with occasional facts" do not satisfy Rule 8's requirements). Sometimes people trip over low bars.

Besides, the fifth amended complaint does not remedy the previous deficiencies in Covington's complaints. Like earlier versions, Covington does not plead that there was a constitutional violation. And without an underlying constitutional violation, a section 1983 conspiracy claim cannot get off the ground. *See, e.g.*, *Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019) (opining that conspiracy claims "depend on proof of an underlying constitutional violation"); *Jones v. Gonzalez*, 2023 WL 4549508, at *8 (N.D. Ill. 2023) ("A plaintiff must plead an underlying constitutional deprivation to have a plausible conspiracy claim under section 1983.").

To be sure, "district courts have a special responsibility to construe pro se complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the pro se litigant would be able to state a meritorious claim." *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). Nonetheless, "[p]ro se litigants are not excused from the procedural requirements of the court." *Gilbert v. Am. Airlines, Inc.*, 2000 WL 1529790, at *2 (7th Cir. 2000); *see also Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998).

Covington took five stabs at amending. At some point, a litigant runs out of strikes, and the court can "deny[] further leave to amend and curtail[] this cat and mouse game of motions to dismiss followed by a motion to amend." *Thompson v. Illinois Dep't of Pro. Regul.*, 300 F.3d 750, 759 (7th Cir. 2002). That point has come.

Amending a complaint imposes costs that go beyond this case. "[A]llowing amendment would place a burden on the judicial system and the public interest in efficient resolution of the cases before it." *Hinton v. Advoc. Health & Hosps. Corp.*, 2023 WL 2726015, at *3 (N.D. Ill. 2023).

The time of a district court judge is a public good. It is a valuable public resource. And it is finite. Everything in life is zero-sum. The time of a district judge is no exception.

Every minute that a court spends on one case is a minute that a court can't spend on another case. Filing amendment after amendment, followed by motion to dismiss after motion to dismiss, means that everyone else has to wait that much longer for judicial attention.

Simply put, amendments come at a cost, and that cost is paid by countless litigants in countless other cases. When litigants amend their complaint again and again, the tab is paid by the opposing party and by every over litigant on every other case on a court's docket. *See Interfocus Inc. v. Hibobi Tech. Ltd.*, 2023 WL 4137886, at *2 (N.D. Ill. 2023) ("When hiking the longest of trails, as every district court judge does, every pound matters. Lugging extra motions takes a toll.").

A district court has the discretion to deny leave to amend "when a plaintiff has had multiple opportunities to state a claim upon which relief may be granted." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347 (7th Cir. 2012); *see also Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1052 (7th Cir. 2019) (explaining that the presumption in favor of allowing amendment can be overcome by "repeated failure to cure the deficiencies raised by defendants").

And as explained above, this Court has serious concerns about the frivolousness of Covington's claims. When an unrepresented litigant, like Covington, makes a court filing, the litigant represents that his "factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* Fed. R. Civ. P. 11(b)(3). "A complaint is factually frivolous if the allegations are clearly baseless, irrational, fanciful, delusional, or wholly incredible." *Weinschenk v. Cent. Intel. Agency*, 818 F. App'x 557, 558 (7th Cir. 2020). A suit is frivolous when "it is apparent from a

reading of the complaint . . . that the case is going nowhere." *Carter v. Homeward Residential, Inc.*, 794 F.3d 806, 807 (7th Cir. 2015).

The idea that a Clerk's Office employee teamed up with Covington's landlord as retaliation for Covington winning a past suit seems to defy reality and stretch imagination beyond the breaking point. Covington does not offer up a theory about why an employee would take interest in his particular case and work with his landlord. It's not clear how the Clerk's Office employees would have even known Covington's landlord, let alone why they would plot with him to evict Covington.

The punchline is simple. Covington had multiple opportunities to file a complaint with enough factual content to state a claim. Covington gave the case his best shot, but he came up empty, so he has shot his wad.

For these reasons, Defendants' motion to dismiss is hereby granted. The federal claims in the fourth amended complaint are dismissed with prejudice. The state law claims in the fourth amended complaint are dismissed without prejudice. Covington's motion to amend is hereby denied.

Date: February 20, 2024

_____

Steven C. Seeger
United States District Judge